SEYFARTH SHAW LLP
Kevin J. Mahoney (SBN 6299398) (*pro hac vice* forthcoming)
kmahoney@seyfarth.com
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Mark. A. Wagner (UT 06353)
mawagner@seyfarth.com
975 F St., N.W.
Washington, DC 20004
Telephone: (415) 732-1152

Attorneys for Plaintiff
Bill.com, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| Bill.com, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Danielle Cox,<br><br>        Defendant. | **COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**<br><br>Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Bill.com, LLC ("BILL"), for its Complaint for Injunctive and Other Relief against Defendant Danielle Cox ("Defendant" or "Cox"), states as follows:

## NATURE OF THE ACTION

1. BILL is a leading provider of cloud-based software that simplifies, digitizes, and automates back-office financial processes for small and mid-sized businesses. BILL helps businesses

streamline their financial workflow, generate and process invoices, streamline approvals, send and receive payments, sync their accounting systems, and manage their cash. BILL has invested countless hours, and significant sums of money, developing its confidential and proprietary information in order to provide it with a competitive advantage in the industry.

2. Defendant Cox is the former Director of Information Technology in BILL's Information Technology ("IT") group. On or about November 30, 2022, Cox requested to be placed on leave from BILL, and began that leave on December 5, 2022.

3. On the very last day before her leave began, Cox used the enhanced access she was given as a leader of BILL's IT group in order to download ***nearly 5,800*** emails from the inbox of her direct supervisor, , and to change BILL's email retention settings in an attempt to hide her actions. Cox then took that massive volume of data that she had downloaded and synchronized it with an unauthorized iCloud account. Moreover, both before and after her leave began on December 5, Cox used her enhanced access and credentials to run searches through the email accounts of at least two other BILL employees without authorization, and to download the Slack logs for the entire BILL organization—put differently, the internal messaging communications of *every* BILL employee.

4. Since discovering her actions on December 21, 2022, BILL has attempted to contact Cox nearly a dozen times by phone, email, overnight courier, and text message to demand (1) an explanation of her activities, (2) the immediate return of her company-issued computer, and (3) the immediate return of BILL's information. Cox has ignored every attempt at communication, and refuses to return her company-issued computer. Even after another BILL employee spoke to Cox via telephone on January 9, 2023 and warned her specifically that she would be sued if she continued to ignore BILL's requests, Cox refuses to respond to BILL or return the company's computer or data.

5. The materials that Cox improperly accessed and exfiltrated contain BILL's highly-sensitive, confidential, and trade secret information regarding the company's personnel, operations,
`2`

business plans and strategies, and marketing plans, along with privileged attorney-client communications regarding other matters involving the company. Cox's refusal to return that information, along with her refusal to even confirm that the information was not improperly disclosed or used by her, places BILL's confidential and trade secret information at high risk of disclosure and misuse by third parties or Cox herself. Cox's actions are in violation of her contractual obligations to BILL, the company's Acceptable Use Policy, and both Utah state and federal law. The value of BILL's confidential and trade secret information is well in excess of $75,000.00.

6. As a result of her actions and complete refusal to respond to BILL's repeated requests, Cox's employment was terminated effective January 9, 2023. BILL now brings this lawsuit in order to prevent further harm to its business arising from Cox's breach of her confidentiality agreement with BILL and her misappropriation of BILL's trade secret information. BILL seeks to enjoin Defendant Cox from utilizing or disclosing BILL's trade secret and confidential information, to enjoin Cox from continuing to violate the terms of her agreement with BILL, and to compel the return of BILL's confidential and trade secret information.

## **PARTIES**

7. BILL is a Delaware limited liability company with its principal place of business in San Jose, California. BILL is a single-member LLC that is wholly owned by Bill.com Holdings, Inc. Bill.com Holdings, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in San Jose, California. Bill.com Holdings, Inc. is a publicly traded company listed on the New York Stock Exchange. No member of BILL is a citizen of the State of Utah, and neither BILL nor Bill.com Holdings, Inc. are organized in, or have their principal place of business in, the State of Utah.

8. Danielle Cox is an individual who is domiciled in and a citizen of the State of Utah.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and the fact that the amount in controversy exceeds $75,000.00. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because BILL's federal Defend Trade Secrets Act ("DTSA") claim, brought under 18 U.S.C. § 1836, *et seq.*, raises a federal question. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Cox pursuant to Utah Code section 78B–3–205 because she is a citizen of and domiciled within the State of Utah, because she conducts business with BILL within the State of Utah, and because she has committed tortious acts within the State of Utah. This Court also has personal jurisdiction over Cox because she specifically agreed that any dispute arising out of her agreement with BILL would be heard in the federal or state courts of Utah and that she would be subject to the personal jurisdiction of those courts. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this claim occurred in this judicial district.

## EVENTS GIVING RISE TO THIS ACTION

### BILL'S BUSINESS AND COX'S ROLE IN IT

11. BILL was founded in 2006 as a provider of automated, cloud-based software for financial operations and end-to-end payments. Over the last 16 years and through several acquisitions as well as organic growth, BILL has grown into a leading provider of cloud-based financial operations software to tens of thousands of other businesses.

12. BILL's operations are dependent upon the safety and security of its electronic information and data systems. BILL has spent nearly two decades developing proprietary and

confidential information about its personnel, operations, business plans and strategies, and marketing plans. Because of the sensitivity of that information, along with the sensitivity of the financial information that BILL's customers entrust to it, BILL invests significant amounts of time and money into its physical computing systems, as well as the personnel who maintain BILL's networks and information.

13. On or about March 11, 2019, Defendant Cox joined DivvyPay, Inc., a provider of expense management software to other businesses, as an IT Manager. DivvyPay, Inc. was later acquired by BILL in May of 2021 and Cox continued her employment with BILL as a Director of Information Technology in BILL's IT group.

14. As a Director of Information Technology in BILL's IT group, Cox was given enhanced access and credentials to BILL's electronic systems. Specifically, in order to effectively accomplish her duties as one of the leaders of BILL's IT group, Cox was given "super administrator" credentials that allowed her to access virtually all of BILL's systems and information, including the email accounts of other employees.

15. Simply put, by virtue of her enhanced credentials, Cox had direct access to the information that drives BILL's success as an organization, and specifically to information about its ongoing operations and business plans.

### BILL'S PROTECTION OF ITS CONFIDENTIAL INFORMATION AND TRADE SECRETS

16. Because of the critical nature of BILL's confidential and trade secret information and how it allows BILL to succeed, BILL closely guards its confidential information and trade secrets. BILL takes specific measures to restrict access to and preserve the confidentiality of this information, including, but not limited to, the following:

a. Requiring its employees to sign agreements containing covenants designed to maintain confidentiality and to return BILL property upon termination of their employment with BILL;

b. Prohibiting its employees from using, copying, divulging, or otherwise disseminating or disclosing BILL confidential information outside of BILL;

c. Restricting access to BILL confidential information on a "need to know" basis;

d. Requiring employees with access to BILL's systems to acknowledge and agreed to adhere to policies regarding the use of that information, including but not limited to an Acceptable Use Policy;

e. Requiring employees to access BILL's systems using secure Virtual Private Network connections; and

f. Requiring employees to use unique login credentials and passwords to access BILL's confidential information.

17. BILL rigorously maintains the confidentiality of its information because the information provides BILL a competitive advantage in the marketplace from which it derives economic value.

18. Any BILL competitor who improperly possessed and used this confidential information, particularly about BILL's operations and business plans, would gain an immediate and unfair competitive advantage, and would be able to unfairly compete with BILL.

19. While BILL's information is primarily stored on servers at its headquarters in California, that information is available to its employees across the nation.

## Cox's Contractual Obligations to BILL

20. When Cox joined DivvyPay, Inc., and as a condition of her employment and before being given access to any confidential information, she was required to enter into a Proprietary Information and Inventions Agreement, dated February 27, 2019. Later, and again as a condition of her ongoing at-will employment and continuing access to confidential information, Cox was

6

required to enter into an updated Proprietary Information and Inventions Agreement dated October 9, 2019 ("the Agreement"). A true and correct copy of the Agreement is attached as **<u>Exhibit 1</u>**. When BILL acquired DivvyPay, Inc. in May of 2021, DivvyPay, Inc.'s rights under the Agreement were assumed by BILL as a matter of law in connection with that acquisition. At the same time, Cox acknowledged that the Agreement would remain effective after the acquisition was complete. A true and correct copy of Cox's acknowledgment of her employment with BILL and the ongoing nature of her contractual obligations under the Agreement is attached as **<u>Exhibit 2</u>**.

21. The Agreement contains certain restrictions on Cox's activities while she was employed by BILL and after, along with restrictions on Cox's use of BILL's confidential and trade secret information.

22. In the Agreement, Cox acknowledged that she was being given access to valuable proprietary information, defined in the Agreement as:

> "information owned by the Company or licensed from third parties regarding (a) research, development, products, services, marketing, selling, business plans, budgets, unpublished financial statements, licenses, prices, costs, contracts and other agreements, suppliers, customers, and customer lists; (b) the identity, skills and compensation of employees, contractors, and consultants; (c) specialized training; and (d) information related to Inventions owned by the Company or licensed from third parties."

(Exhibit 1, § 1.4.)

23. With regard to that confidential information, Cox acknowledged and agreed that:

> "…during my Service and thereafter, pursuant to this agreement, I will hold in strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Proprietary Information, except as such disclosure, discussion, transmission, use, or publication may be required in connection with my

Service, or unless the Chief Executive Officer or Board of Directors of the Company expressly authorizes such disclosure in writing."

(Exhibit 1, § 2.1.)

24. Cox further agreed that if her employment ever ended she would return all property of the company, "including but not limited to laptops, pagers, cell phones, corporate credit cards, keys and/or access cards." Cox also agreed that such property of the company was subject to inspection at any time, with or without notice. (Exhibit 1, § 11.)

25. In addition to her obligations under the Agreement, Cox also agreed to BILL's Acceptable Use Policy. A copy of the Acceptable Use Policy is attached hereto as **Exhibit 3**.

26. BILL's Acceptable Use Policy, which Cox was tasked with implementing as a member of IT leadership, mandates that any confidential information stored on BILL's electronic and computing devices is the sole property of BILL, that Cox had an obligation to report any unauthorized use of such information, that she was permitted to access such information only to the extent it was authorized and necessary to fulfill her assigned job duties, and that she was strictly prohibited from syncing personal iCloud or other cloud-based accounts to company-issued devices. (Exhibit 3, § 3.1.) The Acceptable Use Policy further prohibits Cox from using other employee's accounts, from taking any actions to "disable, damage or otherwise interfere with any security related features," or from attempting to gain unauthorized access to BILL's accounts. (*Id.*, § 4.3.)

27. Cox agreed that the Agreement would be governed by and construed in accordance with the law of the State of Utah. (Exhibit 1, § IV(C).) Cox also agreed that in any action to enforce the confidentiality restrictions in the Agreement, that injunctive and equitable relief

would be appropriate without the necessity of posting a bond, and that such an action should be tried and litigated in the state or federal courts of Utah. (*Id.*, § 15.2.)

28. Cox also agreed in her Offer Letter agreement with DivvyPay, Inc. that, except for actions seeking injunctive relief as a result of her breach of the Agreement, any dispute arising from her employment would be subject to binding arbitration. Those rights were also assumed by BILL as a matter of law in connection with the acquisition of DivvyPay, Inc. BILL seeks injunctive relief only in this action, and intends to seek any monetary damages in arbitration.

## **DEFENDANT COX BREACHES HER AGREEMENT**

29. On or about November 30, 2022, Cox requested a leave of absence from BILL. That request was granted and Cox's leave was to begin on Monday, December 5, 2022.

30. On December 2, 2022—the Friday before her leave was scheduled to begin—Cox used her enhanced credentials to access BILL's electronic systems, including its Google Vault application. Using those enhanced credentials to the company's Google Vault, Cox accessed and downloaded approximately ***5,800*** emails from her supervisor's email account, including thousands of email messages for the timeframe of July 5, 2022 to December 2, 2022. After she accessed those materials, Cox synced them from her company-issued computer to an unauthorized iCloud account.

31. That same day, Cox also ran searches through the email accounts of two other BILL employees. Cox did not have authorization to access or search through those accounts, nor any legitimate business reason to do so.

32. Between November 30, 2022 and December 7, 2022, again using her enhanced credentials, Cox requested five different exports of data from BILL's corporate Slack account, including a manual export of the company's entire slack database; *i.e*. the internal messaging of

9

every employee of the company. Upon a review of forensic software, it appears that Cox exfiltrated that information to a non-company computer.

33. Because BILL expected Cox to return from leave, it did not turn off her access to the company's systems or require the return of her company-issued computer while she was on leave. Between December 5, 2022 and December 20, 2022, after her leave began, Cox continued to search for highly sensitive information of BILL in the email accounts of her direct supervisor and other colleagues. There is no legitimate reason why Cox needed to access those materials as part of her job duties, nor was she ever authorized to do so by anyone at BILL, much less while she was on leave.

34. Just days ago, BILL also discovered that in an apparent effort to hide her unauthorized access and exfiltration of the above-mentioned information, Cox altered the email retention settings on her email account (along with those of several other IT group members) such that deleted emails would be permanently destroyed after 1 day and rendered unrecoverable, rather than indefinitely retained per the prior setting. In an apparent attempt to hide her actions, Cox changed these retention settings on her last day in the office before her leave was to begin (December 2), then changed the retention settings back to the default setting the following Monday (on December 5).

35. On December 21, 2022, BILL discovered Cox's aforementioned access and downloading of emails and the company's Slack account and immediately suspended her access to the company's networks. The next day, BILL representatives attempted to contact Cox by phone, text message, and email to her personal email account to request an explanation of her actions, as well as the immediate return of BILL's company-issued computer and any data belonging to the company. Cox ignored every attempt at communication.

36. On December 29, 2022, BILL sent cease and desist correspondence to Cox, both through her personal email and at her home, demanding that she immediately return BILL's equipment and data, and that she confirm that the information she exfiltrated was not being shared with or disclosed to any third party. A true and correct copy of that correspondence is attached hereto as **Exhibit 4**. Again, Cox ignored that communication.

37. As a result of her refusal to return the Company's property or explain her actions, BILL terminated Cox as an employee effective January 9, 2023. That same day, a BILL representative spoke to Cox telephonically and told her that the company would pursue legal action if she continued to ignore its demands for the return of its equipment and data. As of the filing of this lawsuit, Cox continues to ignore BILL's attempts to reach her and refuses to return her company-issued computer or the materials that she wrongfully exfiltrated.

38. Cox clearly has no intention of returning BILL's confidential and trade secret information, and continues to ignore BILL's repeated demands for its return. It is apparent that Cox can be compelled only by this Court to abide by her contractual obligations, as well as state and federal law, and to return BILL's equipment and confidential and trade secret information.

### EFFECT OF THE DEFENDANT'S CONDUCT

39. Upon information and belief, Cox accessed and continues to access BILL's confidential and trade secret information. Because of Cox's intimate knowledge of BILL's electronic systems and data, Cox is uniquely positioned to cause BILL substantial harm through the misuse of BILL's confidential and trade secret information.

40. Defendant's unauthorized use and threatened disclosure of BILL's confidential and trade secret information places BILL's goodwill, customer relationships, trade secrets, and

confidential and proprietary information at significant risk of destruction or loss, which cannot be adequately addressed at law.

41. Cox's actions have already irreparably harmed, and will continue to irreparably harm, the value of BILL's confidential and trade secret information.

42. Consequently, BILL now brings suit against Cox for breach of her Agreement, conversion of its computer, and misappropriation of trade secrets. BILL seeks an order enjoining Defendant Cox from (a) continuing her knowing and intentional breach of her Agreement; (b) utilizing or disclosing BILL's confidential and trade secret information on behalf of herself or any other party; and (c) possessing BILL's confidential and proprietary information. BILL seeks an Order directing Cox to immediately return that information and equipment to BILL, and to cease any further destruction of relevant evidence.

## COUNT I
## BREACH OF CONTRACT

43. BILL hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 42.

44. The Agreement that Cox executed, and which is attached hereto as Exhibit 1, constitutes a valid and enforceable agreement. The rights and obligations of Divvy Pay, Inc. under the Agreement were assumed by BILL, and BILL has the right to enforce the Agreement.

45. BILL performed all of the duties and obligations it agreed to and owed to Cox under the Agreement.

46. Under the Agreement, Cox is prohibited from taking, misappropriating, or misusing BILL's proprietary information. (Exhibit 1, § 2.1.)

47. Under the Agreement, Cox also agreed that any BILL property, including specifically its computers, was subject to inspection by BILL personnel at any time and that she was obligated to immediately return all BILL property upon the termination of her employment. (*Id.* § 11.)

48. Cox is breaching the Agreement through her improper and illegal downloading and retention of BILL's confidential information and trade secrets, and her ongoing refusal to return that information or BILL's computer equipment.

49. Because of Cox's breaches and prospective breaches of the Agreement, BILL has been irreparably injured and continues to face irreparable injury. BILL is threatened with losing the value of its confidential and proprietary information, including BILL's personnel, operations, business plans and strategies, and marketing plans, along with privileged attorney-client communications regarding other matters involving the company, for which a remedy at law is inadequate.

50. Accordingly, Cox must be enjoined and restrained by Order of this Court.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS
## (UTAH UNIFORM TRADE SECRET ACT)

51. BILL hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 42.

52. BILL confidential and proprietary information includes, inter alia, information regarding BILL's personnel, operations, business plans and strategies, and marketing plans, along with privileged attorney-client communications regarding other matters involving the company.

53. The aforementioned information constitutes trade secrets, pursuant to the Utah Uniform Trade Secret Act, Utah Code Ann. §§ 13–24–1 et seq., because BILL derives

independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

54. Defendant Cox actually has misappropriated, and threatens to misappropriate, BILL's trade secrets without its consent, in violation of Utah law.

55. Specifically, as discussed above, Cox accessed and exfiltrated thousands of email messages from her direct supervisor, accessed the emails of her other colleagues without any legitimate business reason, and exfiltrated the internal Slack messages of every BILL employee. Despite repeated demands, Cox steadfastly refuses to return that information or confirm to BILL that she has not and will not disclose that information to third parties or misuse it.

56. Cox's actions are willful and malicious. As a leader in BILL's IT group, Cox is acutely aware of the gravity of her actions and the harm that BILL faces as a result of them.

57. Unless restrained, Cox will continue to retain, improperly access, and otherwise misappropriate BILL's trade secrets and confidential information.

58. Because of the actual misappropriation of BILL's trade secrets, BILL has been injured and faces irreparable injury.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT 18 U.S.C. § 1832, *et seq.*

59. BILL hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 42.

60. The Defend Trade Secrets Act ("DTSA") defines "trade secret" to include all forms and types of financial, business, or economic information, including patterns, plans, compilations,

methods, techniques, processes, procedures, or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public. See 18 U.S.C. §§ 1836, 1839.

61. Defendant Cox acquired and/or is using BILL's trade secrets by improper means and without authorization. In particular, Cox obtained trade secrets from BILL by improperly using the enhanced credentials afforded to her as a leader in BILL's IT group to access the highly sensitive emails of other employees as well as the internal messages of the entire company. Cox then exfiltrated that information to an unauthorized iCloud account, in violation of both her contractual agreement and BILL's Acceptable Use Policy.

62. The information that Cox used and continues to use constitutes trade secrets within the meaning of the DTSA. Such information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, the public; other persons can obtain economic value from its disclosure or use; and it is the subject of significant efforts to maintain its secrecy.

63. As detailed above, BILL takes reasonable and appropriate measures to protect the confidentiality of the above-described trade secrets.

64. Defendant Cox knew or should have known that BILL trade secrets: (a) are confidential; (b) were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; (c) were developed or acquired by BILL at great expense and effort; (d) are maintained as confidential and are not generally available to the public or BILL's competitors; and (e) are critical to BILL's ability to conduct its business successfully.

65. By using, refusing to return, and/or threatening to use BILL's trade secrets, Cox has misappropriated and threatens to misappropriate BILL's trade secrets in violation of the DTSA, which allows injunctive relief for actual or threatened misappropriation of trade secrets.

66. The information that Cox has misappropriated and threatens to misappropriate relates to BILL's highly confidential strategies for its nationwide operations and thus involves products and services that are sold in, utilized throughout, and/or travel through interstate commerce.

67. Cox's continued use and retention of BILL's trade secrets, as well as the threatened disclosure of such information, will harm and/or threaten to harm BILL and its legitimate business interests.

68. Cox's actions were willful and malicious.

69. Because Cox's misconduct is ongoing and it poses a threat of significant irreparable harm that cannot be compensated by money alone, BILL requests that this Court grant injunctive relief against Cox from actual or threatened disclosure or utilization of BILL's trade secrets, and compel the immediate return of BILL's information.

**COUNT IV**
**CONVERSION**

70. BILL hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 42.

71. This claim for conversion is based upon Defendant Cox's refusal to return BILL's physical equipment in the form of her company-issued computer and is not based upon her misappropriation of the Company's confidential or trade secret information.

72. BILL has the right to immediate possession of the computer that it issued to Defendant Cox.

73. Without justification, Cox has interfered, and continues to interfere, with BILL's property in the form of that computer by refusing to return it to BILL.

74. Defendant Cox's actions have deprived BILL of the use and possession of its property, and specifically of the computer that it issued to Cox.

75. BILL is entitled to immediate possession of its property, and was entitled to such possession at the time of Cox's conversion of that computer. BILL has been harmed and continues to be harmed by Cox's conversion of that computer.

## **PRAYER FOR RELIEF**

WHEREFORE, BILL seeks judgment in its favor and an Order against Defendant Danielle Cox that grants the following relief:

A. Enjoining Defendant Danielle Cox and all parties in active concert or participation with her from using or disclosing any of BILL's confidential, proprietary, and/or trade secret information;

B. Ordering Defendant Danielle Cox and all parties in active concert or participation with her, to return to BILL all originals and copies of all files, data, information, and/or documents that contain or relate to BILL's confidential, proprietary, and trade secret information, including without limitation all electronic media, in a manner that preserves all relevant metadata associated with that data;

C. Ordering Defendant Danielle Cox and all parties in active concert or participation with her, to preserve all documents, data, and electronic information and to produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by Defendant Cox;

D. Awarding BILL its attorney fees and costs incurred in this matter; and

E. Awarding BILL such further relief as the Court deems necessary and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

| | |
|---|---|
| DATED: JANUARY 11, 2023 | Respectfully submitted,<br><br>**Bill.com, LLC**<br><br>By: */s/ Mark A. Wagner*<br>     One of Its Attorneys |

SEYFARTH SHAW LLP

Kevin J. Mahoney (SBN 6299398) (*pro hac vice* forthcoming)
kmahoney@seyfarth.com
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Mark. A. Wagner (UT 06353)
mawagner@seyfarth.com
975 F St., N.W.
Washington, DC 20004
Telephone:     (415) 732-1152

*Attorneys for Plaintiff Bill.com, LLC*