# EXHIBIT 1

# PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT
*[Use for Full-Time Employees and Consultants]*

In consideration of my employment or engagement by DivvyPay, Inc. (the "**Company**"), the Company's disclosure of or agreement to disclose certain Proprietary Information (as defined below) to me, any compensation now and/or hereafter paid to me, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned hereby agrees with the Company as follows:

1. **Definitions**.

1.1 The term "*Agreement*" means this Proprietary Information and Inventions Agreement.

1.2 The term "*Service*" means any period during which I am engaged as a full-time employee or consultant of the Company.

1.3 The term "*Inventions*" means discoveries; developments; trade secrets; processes; formulas; data; lists; software programs; and all other works of authorship, mask works, ideas, concepts, know-how, designs, and techniques, whether or not any of the foregoing is or are patentable, copyrightable, or registrable under any intellectual property laws or industrial property laws in the United States or elsewhere.

1.4 The term "*Proprietary Information*" means information owned by the Company or licensed from third parties regarding (a) research, development, products, services, marketing, selling, business plans, budgets, unpublished financial statements, licenses, prices, costs, contracts and other agreements, suppliers, customers, and customer lists; (b) the identity, skills and compensation of employees, contractors, and consultants; (c) specialized training; and (d) information related to Inventions owned by the Company or licensed from third parties.

1.5 The term "*Third Party Information*" means confidential or trade secret information that the Company may from time to time receive from third parties or information related to Inventions of third parties, which is subject to a duty on the Company's part to maintain the confidentiality of such Third Party Information and to use it only for certain limited purposes.

2. **Nondisclosure**.

2.1 I acknowledge that contemporaneously with my execution of this Agreement, the Company is providing me with Proprietary Information and/or initial specialized training. In consideration of the Company's provision of Proprietary Information and initial specialized training, I agree that during my Service and

thereafter, pursuant to this agreement, I will hold in strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Proprietary Information, except as such disclosure, discussion, transmission, use, or publication may be required in connection with my Service, or unless the Chief Executive Officer or Board of Directors of the Company expressly authorizes such disclosure in writing. I also agree that in connection with this Agreement, I will also be bound by the provisions of Sections 7 and 8.

2.2 At all times during my Service and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Third Party Information, except as such disclosure, discussion, transmission, use, or publication may be required in connection with my Service, or unless the Chief Executive Officer or the Board of Directors of the Company expressly authorizes such disclosure in writing.

3. **Assignment**.

3.1 The term "*Ownership Rights*" means all rights, title, and interest (including but not limited to Intellectual Property Rights) in property, whether that property is tangible or intangible. The term "*Intellectual Property Rights*" means all intellectual property and industrial property rights of any kind whatsoever throughout the world, including but not limited to patent rights, copyrights (including but not limited to mask work rights), trade secret rights, and, if recognized, Moral Rights (where "*Moral Rights*" means all rights related to paternity, integrity, disclosure, and withdrawal). I hereby irrevocably assign to the Company any Ownership Rights I may have or acquire in any Proprietary Information and acknowledge that all Proprietary Information shall be the sole property of the Company and that the Company shall be the sole owner of all Ownership Rights in connection therewith.

3.2 The term "*Company Inventions*" means all Inventions that (a) relate to the business or proposed business of the Company and that are discovered, developed, created, conceived, reduced to practice, made, learned or written by me, either alone or jointly with others, in the course of my Service; (b) utilize, incorporate or otherwise relate to Proprietary Information; (c) I discovered, developed, created, conceived, reduced to practice, made, or wrote prior to or outside the scope of my Service and that are incorporated into any Inventions owned by or assigned to the Company and/or its assigns; or (d) are discovered, developed, created, conceived, reduced to practice, made, or written by me using Company property or equipment. I hereby irrevocably assign to the Company all my Ownership Rights in and to any and all Company Inventions.

3.3 I acknowledge and agree that any work of authorship comprising Company Inventions shall be deemed to be a "*work made for hire*," as that term is defined in the United States Copyright Act (17 U.S.C. § 101 (2000)). To the extent that any such work of authorship may not be deemed to be a work made for hire, I hereby irrevocably assign all my Ownership Rights in and to such work to the Company. If any such work of

authorship cannot be assigned, I hereby grant to the Company an exclusive, assignable, irrevocable, perpetual, worldwide, sublicensable (through one or multiple tiers), royalty-free, unlimited license to use, reproduce, distribute, create derivative works of, publicly perform, publicly display and digitally perform and display such work in any media now known or hereafter known. Outside the scope of my Service, I agree not to (a) modify, adapt, alter, translate, or create derivative works from any such work of authorship or (b) merge any such work of authorship with other Inventions. To the extent, Moral Rights may not be assignable under applicable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, I hereby irrevocably waive such Moral Rights and consent to any action of the Company that would violate such Moral Rights in the absence of such consent.

3.4 I acknowledge and agree that nothing in this Agreement shall be deemed to grant, by implication, estoppel or otherwise, (a) a license from the Company to me to make, use, license, or transfer in any way a Company Invention or (b) a license from the Company to me regarding any of the Company's existing or future Ownership Rights.

4. **Enforcement of Rights**.

4.1 I will assist the Company in every proper way to obtain and from time to time enforce Ownership Rights relating to Company Inventions in any and all countries. To that end, I will execute, verify, and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining, and enforcing such Ownership Rights and the assignment thereof. In addition, I will execute, verify, and deliver assignments of such Ownership Rights to the Company. My obligation to assist the Company with respect to Ownership Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my Service, but the Company shall compensate me at a reasonable rate after such termination for the time actually spent by me at the Company's request on such assistance.

4.2 In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its assigns' duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph thereon with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, that I now or may hereafter have for infringement of any Ownership Rights assigned hereunder to the Company.

5. **Obligation to Keep Company Informed**.

During my Service, I will promptly disclose to the Company fully and in writing and will hold in trust for the sole right and benefit of the Company any and all Company Inventions. In addition, during the first year after termination of my Service, I will provide the Company with a complete copy of each patent application and copyright registration application (including but not limited to any mask work registration application) filed by me or that names me as an inventor, co-inventor, author, co-author, creator, co-creator, developer, or co-developer.

6. **Retained Inventions**.

To preclude any possible uncertainty over the ownership of any Inventions, I have, to the best of my knowledge, set forth on Exhibit A attached hereto a complete list of all Inventions that I have, alone or jointly with others, prior to the commencement of my Service, discovered, developed, created, conceived, reduced to practice, made, learned, or written, or caused to be discovered, developed, created, conceived, reduced to practice, made, learned, or written, that I consider to be my property or the property of third parties (collectively, " *Retained Inventions*"). If disclosure of any such Invention on Exhibit A would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Inventions in Exhibit A but am to inform the Company that all Inventions have not been listed for that reason. To the extent that I incorporate any Retained Inventions into a Company Invention or rely upon any Retained Invention in discovering, developing, creating, conceiving, or reducing to practice any Company Invention, I hereby grant to the Company a non-exclusive, assignable, irrevocable, perpetual, worldwide, sublicensable (through one or multiple tiers), royalty-free license to use, reproduce, distribute, create derivative works of, publicly perform, publicly display, digitally perform and display, make, have made, sell, and offer for sale such Retained Inventions in any media now known or hereafter known.

**7. Non-Competition; Non-Solicitation.**

7.1 During my Service, I will not, directly or indirectly, either for myself or for any other person, partnership, corporation, company or other entity, own any interest in, manage, control, participate in, consult with, render services for, or in any other manner engage or participate in the ownership, management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any person, corporation, firm, or other entity, including any foreign corporation, firm, or other entity, that competes with the Company in the state of Utah, or in any other state in the United States, in the conduct of the Business of the Company as conducted or as proposed to be conducted in the future, specifically including, but not limited to: Concur, Expensify, Brex, Bento, Chase Bank, Wells Fargo, Citi Bank, PEX, American Express, Visa, and Mastercard.  Furthermore, I will not engage in any other activities that conflict with any of my obligations to the Company.  I agree that the aforementioned covenants are reasonable with respect to their duration, geographical area and scope. In particular, I acknowledge and agree that the geographic scope of this restriction is necessary to protect the goodwill and confidential information of Company. For the purposes of this Section 7, "Business" shall mean those portions of the Company's business in which I actively participated, or regarding which I received Proprietary Information.

7.2 During my Service and for a period of one year after my Service is terminated for any reason, I will not, directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit, assist or in any way (i) encourage any current employee or consultant of the Company to terminate his or her employment relationship or consulting relationship with or for the Company, nor will I solicit the services of any former employee or consultant of the Company whose service has been terminated for less than three months, or (ii) induce or attempt to induce any supplier, licensee, licensor, franchisee or other business relation of Company to cease doing business with Company or in any way interfere with the relationship between any such supplier, licensee or business relation and Company.

7.3 During my Service and for a period of two years after my Service is terminated for any reason, I will not, directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit to the detriment of the Company and/or for the benefit of any competitor of the Company, take away or attempt to take away, in whole or in part, any Customer of the Company, or otherwise interfere with the Company's relationship with any Customer. For purposes of this Section 7.3, "Customer" shall mean any company or business entity to which the Company sells or licenses goods or services to, or that I had contact with or performed services for during my Service.

7.4 If, at the time of enforcement of this Section 7, a court shall hold that the duration, scope or area restrictions stated herein are unreasonable under the circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. I acknowledge that the restrictions contained in this Section 7 are reasonable and that I have reviewed the provisions of this Agreement.

**8. Post-Employment Non-Compete.**

8.1 I acknowledge that during the course of my employment with Company, I have become familiar with Company's business, that my services have been special, unique and of extraordinary value to Company, and therefore, I agree that for a period of one year after my Service is terminated for any reason, I will not, directly or indirectly, either for myself or for any other person, partnership, corporation, company or other entity, own any interest in, manage, control, participate in, consult with, render services for, or in any other manner engage or participate in the ownership, management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any person, corporation, firm, or other entity, including any foreign corporation, firm, or other entity, that competes with the Company in the state of Utah, or in any other state in the United States, in the conduct of the Business of the Company as conducted or as proposed to be conducted in the future, specifically including, but not limited to: Concur, Expensify, Brex, Bento, Chase Bank, Wells Fargo, Citi Bank, PEX, American Express, Visa, and Mastercard. Notwithstanding the foregoing, I am permitted to own up to 1% of any class of securities of any corporation in competition with the Company that is traded on a national securities exchange or through Nasdaq. For the purposes of this Section 8, "***Business***" shall mean those portions of the Company's business in which I actively participated, or regarding which I received Proprietary Information.

8.2 If, at the time of enforcement of this Section 8, a court shall hold that the duration, scope or area

restrictions stated herein are unreasonable under the circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law.  I acknowledge that the restrictions contained in this Section 8 are reasonable and that I have reviewed the provisions of this Agreement.

9. **No Improper Use of Materials**.

I represent and warrant that during my Service I shall not use or incorporate into any Company Invention any confidential information or trade secrets of any former employer, any person or entity for whom I provided services, or any other person or entity unless I have obtained all consents, licenses, or other rights necessary to allow me to provide the Company with the assi
gnments and licenses set forth herein. I represent and warrant that during my Service I shall not improperly use or disclose any confidential or trade secret information, if any, of any former employer or any other person or entity to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person or entity to whom I have an obligation of confidentiality unless expressly consented to in writing by that former employer, person, or entity.

10. **No Conflicting Obligation**.

I represent that my performance of all the terms of this Agreement and my Service does not and will not breach any agreement between me and any other employer, customer, person or entity. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

11. **Return of Company Property**.

When my Service is completed, I will immediately deliver to the Company all drawings, notes, memoranda, specifications, devices, formulas, and documents (whether written, printed, or otherwise reproduced or recorded), together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information. I will also immediately deliver all Company property; including but not limited to laptops, pagers, cell phones, corporate credit cards, keys and/or access cards. I further agree that all property situated on the Company's premises and owned, leased, or licensed by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by personnel of the Company at any time with or without notice.

12. **Legal and Equitable Remedies**.

Because my services are personal and unique and because I will have access to and become acquainted with Proprietary Information, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

13. **Authorization to Notify New Employer**.

I hereby authorize the Company to notify any new employer or entity for which I provide services about my rights and obligations under this Agreement following the termination of my Service.

14. **Notices**.

Any notices required or permitted hereunder shall be given to the appropriate party at the party's last known address. Such notice shall be deemed given upon personal delivery to the last known address or if sent by certified or registered mail, three days after the date of mailing.

15. **General Provisions**.

15.1 Governing Law. This Agreement will be governed by and construed according to the laws of the State of Utah, without regard to conflicts of law principles.

15.2 Exclusive Forum. I hereby irrevocably agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Utah, and I agree to the exclusive personal jurisdiction and venue of any court in Utah County, Utah and waive any defense thereto.

15.3 Entire Agreement. This Agreement, and any offer letter, consulting agreement or employment agreement signed concurrently herewith, supersedes and merges all prior discussions between us relating to the subject matter hereof. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

15.4 Severability.
    a. I acknowledge and agree that each agreement and covenant set forth herein constitutes a separate agreement independe

    b. I understand and agree that Section 8 of this Agreement is to be enforced to the fullest extent permitted by law. According

15.5 Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators, and

other legal representatives and will be for the benefit of the Company, its successors and assigns. I expressly agree that the Company has the right to assign this Agreement.

15.6 Survival. The provisions of this Agreement shall survive the termination of my Service for any reason and the assignment of this Agreement by the Company to any successor in interest or other assignee(s).

15.7 At-Will Relationship. I agree and understand that my Service is at will, which means that either I or the Company may terminate the relationship at any time, with or without prior notice and with or without cause. I further agree and understand that nothing in this Agreement shall confer any right with respect to the continuation of Service, nor shall it interfere in any way with my right or the Company's right to terminate my Service at any time, with or without cause.

15.8 Waiver. No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

15.9 Recovery of Attorney's Fees. In the event of any litigation arising from or relating to this Agreement, the prevailing party in such litigation proceedings shall be entitled to recover, from the non-prevailing party, the prevailing party's reasonable costs and attorney's fees, in addition to all other legal or equitable remedies to which it may otherwise be entitled.

15.10 Headings; Counterparts. The headings to each section or paragraph of this Agreement are provided for convenience of reference only and shall have no legal effect in the interpretation of the terms hereof. This Agreement may be executed in counterparts and by facsimile signatures.

I HAVE READ THIS PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS. I HAVE COMPLETELY FILLED OUT EXHIBIT A TO THIS AGREEMENT.

This Agreement shall be effective as of the first day of my Service.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS MY RIGHTS TO INVENTIONS I MAKE DURING MY SERVICE, RESTRICTS MY RIGHT TO DISCLOSE OR USE PROPRIETARY INFORMATION DURING OR SUBSEQUENT TO MY PERIOD OF SERVICE, AND PROHIBITS ME FROM COMPETING WITH THE COMPANY AND/OR FROM SOLICITING EMPLOYEES AND CUSTOMERS OF THE COMPANY DURING MY SERVICE AND FOR A PERIOD OF TIME AFTER MY SERVICE IS TERMINATED FOR ANY REASON.

Employee

*(signature: Danielle Cox)*

Danielle Cox

Dated: 10/09/2019

Accepted and Agreed to:

*(signature: Casey Bailey)*

Name: Casey Bailey

Title: Vice President, People & Places

If you have inventions to disclose, please complete the attached form and send to casey.bailey@divvypay.com.